**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 9, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CLYDE APPERSON; WILLIAM
LEONARD PICKARD,

Defendants-Appellants.

Nos. 14-3069 & 14-3070
(D.C. No. 5:00-CR-40104-JTM-2)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **HOLMES**, and **PHILLIPS**, Circuit Judges.

---

Defendants William Leonard Pickard and Clyde Apperson ("Defendants")

appeal from the denial of their motion to unseal a confidential informant ("CI")

file. Defendants assert a common-law right of access to the CI file as a judicial

record. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that

the district court failed to provide an adequate explanation of its reasoning in

light of the governing legal standards to permit our merits review. Accordingly,

---

[*] This Order and Judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

we **vacate** the district court's order and **remand** for further proceedings.

# I

In 2003, a jury convicted William Leonard Pickard and Clyde Apperson of various drug offenses related to the manufacture and distribution of lysergic acid diethylamide ("LSD").[1] *See United States v. Apperson*, 441 F.3d 1162, 1175, 1177 (10th Cir. 2006). The government's case relied in part on the significant cooperation and testimony of one of Defendants' accomplices, Gordon Todd Skinner. Mr. Skinner had worked as a confidential informant for the U.S. Drug Enforcement Administration ("DEA"). At trial, the district court ordered the government to turn over Mr. Skinner's CI file to the defense. At the same time, however, the court sealed the file.

In 2011, Defendants moved to unseal Mr. Skinner's CI file. *See United States v. Pickard*, No. 00-40104-01/02-RDR, 2012 WL 1658899, at *1 (D. Kan. May 9, 2012), *rev'd*, 733 F.3d 1297 (10th Cir. 2013). Although Defendants' counsel already had access to an unredacted copy, Defendants sought to unseal the file in order to use it in connection with ongoing litigation under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and other proceedings. The government opposed the motion, arguing that Defendants had failed to show a

---

[1] Defendants were convicted of conspiracy to manufacture and distribute LSD in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and of possession with intent to distribute LSD in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The district court sentenced Mr. Apperson to thirty years' imprisonment. Mr. Pickard received a life sentence.

legitimate need to unseal the file and had not identified any public interest that outweighed the DEA's interest in keeping informant files confidential.

The district court denied Defendants' motion and concluded that the CI file should remain under seal. The court reasoned:

> [S]ome aspects of these matters have been referred to by this court and mentioned by the government at various times during these proceedings. Nevertheless, the court fails to find that all of the information contained in the documents has been revealed. The court is further persuaded that some of it should not be revealed. The defendants have failed to indicate exactly why these documents now need to be unsealed. They have not specifically explained what information in any of the documents is necessary for them to use in any appropriate legal proceeding. The court remains convinced that information concerning confidential informants should remain private absent a compelling reason. The court recognizes that much of Skinner's life has been placed under the microscope in this case, but we see no need for any further examination of his past. The court finds that the defendants have not sufficiently demonstrated the need for unsealing these documents. The defendants have also failed to adequately show why the public has any interest in these documents.

*Pickard*, 2012 WL 1658899, at *3. Accordingly, it denied Defendants' motion to unseal the file.

On appeal, we reversed the district court's decision. *See United States v. Pickard*, 733 F.3d 1297, 1300 (10th Cir. 2013). In relevant part, we concluded that the court erred in the manner in which it denied Defendants' motion in three ways. *See id.* at 1300, 1303–05. First, it failed to require the government to articulate a significant interest in continuing to keep the DEA records sealed.

3

Second, the court failed to apply the presumption of public access to judicial records. And, third, assuming that the government could articulate a significant interest, the court did not consider whether such an interest would be adequately served by selectively redacting the documents and unsealing the rest of the file. Although we left open the possibility that the government could articulate an interest that would justify keeping at least a portion of the records sealed, we noted that "[t]he fact that some of the sealed information has already been made public suggests that much of the information in the DEA records could be unsealed." *Id.* at 1305. We remanded for the district court to reconsider Defendants' motion in light of our decision.

On remand, the government argued that unsealing the records would undercut the need for effective law enforcement, "since investigative files '[o]ftentimes [contain] an informant's personal information, personal information of investigative subjects or uninvolved third parties, law enforcement methods or techniques, or other sensitive information,' the disclosure of which might 'jeopardize ongoing or future investigations.'" *United States v. Pickard*, Nos. 00-40104-01, 00-40104-02-JTM, 2014 WL 789202, at *2 (D. Kan. Feb. 26, 2014) (alterations in original) (citation omitted). Further, it expressed concern about the deterrent effect of the routine disclosure of criminal files, which might discourage informants or witnesses from cooperating with the government, and "would open witnesses and law enforcement personnel named in those records to physical

4

attacks, threats, harassment, or retaliation." *Id.* (citation omitted). Finally, the government argued that these interests strongly outweigh the public's limited interest in a specific criminal investigative file.

The district court, however, granted in part Defendants' motion to unseal the file. It found that:

> [W]hile the government has shown a strong and compelling interest in the generalized confidentiality of criminal investigative records, it has failed to make any specific showing in this case that these interests cannot be vindicated by selective redaction. . . .
>
> Here, the government has not affirmatively demonstrated the existence of any informants or confidential witness other than Skinner. Neither has the government affirmatively represented that Skinner's DEA file (now apparently a decade old) would imperil any actual ongoing criminal investigations.

*Id.* (citation omitted). The court imposed the following conditions on its grant of relief:

> [T]he government is authorized to selectively redact from the materials produced (a) the identity or personal information of informants other than Skinner; (b) the identity or personal information of other witnesses or law enforcement officers, other than those who testified at trial; (c) evidence which would specifically reveal any heretofore unknown criminal investigatory technique; or (d) evidence relating to any ongoing criminal investigation. To the extent the government seeks redaction, it shall produce to the court *in camera* both redacted and unredacted copies of the file, together with an itemized justification for each redaction. The defendant's Motion to Unseal is hereby granted as provided herein.

*Id.* (citation omitted).

5

Shortly thereafter, the government filed a motion to clarify the district court's order. It asserted a good-faith belief that it was already in compliance with the court's order based on its prior submissions to the court. Specifically, the government rested on its prior submission of (1) redacted copies of the file, along with a *Vaughn* index, which had been submitted as part of the government's earlier memorandum regarding the sealed documents, *see generally Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973) (requiring the government to establish "a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the document" sought to be disclosed);[2] and (2) unredacted copies of the file that were delivered to the court. The government further requested a clarification to specifically bar Defendants' counsel from disclosing the DEA records to Defendants or anyone else.

In response, the district court entered an order granting the government's motion and finding that the government was in compliance with its prior order. *See* Aplt. App. at 1228–29 (Mem. & Order, dated Mar. 21, 2014). In summary

---

[2] More specifically, "[a] *Vaughn* index is a compilation prepared by the government agency (or intervenor) listing each of the withheld documents and explaining the asserted reason for its nondisclosure." *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 940 n.3 (10th Cir. 1990). In this case, the *Vaughn* index that the government submitted to the court consisted of the list of documents and associated objections that it had produced in related FOIA proceedings filed by Mr. Pickard in the United States District Court for the Northern District of California. *See Pickard v. Dep't of Justice*, No. C 06-00185 CRB, 2014 WL 1868841, at *1 (N.D. Cal. May 7, 2014).

fashion, the court explained:

> The government's earlier Memorandum of Law references the California *Vaughn* index, but does not explicitly state that it advances the same redactions herein. The court takes the government's present motion as an adoption of those redactions, and determines that the government is in compliance with the court's directive.
>
> The government also requests that the court clarify its earlier Order to specify that the disclosures rendered pursuant to the Order are not to be further disseminated by counsel for the defendant, William K. Rork, to any other person without specific leave of court. This restriction is in keeping with prior restrictions, and the court adopts the same limitation herein.

*Id.* (citation omitted).

Defendants, in turn, filed their own motion to clarify the court's order. Defendants argued that the motion to unseal related only to the CI file that the district court had sealed during their trial, as opposed to the more general agency file on Mr. Skinner maintained by the DEA.[3] And they pointed out that the *Vaughn* index that had been prepared in the context of the FOIA litigation in the United States District Court for the Northern District of California did not

---

[3] According to Defendants, the DEA's agency file (as opposed to the CI file sealed by the court) is the subject of the FOIA proceedings in California and was never requested as part of this action. This distinction is relevant in part because litigation in this case has proceeded on the assumption that the CI file sealed by the court constitutes a judicial record. *See Pickard*, 733 F.3d at 1302 n.5 ("The Government assumes that the DEA file is a judicial record. And we agree."). Defendants contend that the common-law right of public access to judicial records, and not FOIA, provides the controlling standards. And if there are no judicial records at issue, Defendants concede that there is no common-law right of access to agency files maintained elsewhere by the DEA.

7

account for all the records contained in the sealed CI file.[4]  More generally,

Defendants argued that the *Vaughn* index was insufficient, and claimed that the

government had made no effort to segregate non-exempt material in its disclosure.

Finally, they requested a modification of the nondisclosure order to allow

Defendants themselves to access the CI file.

The district court granted in part and denied in part Defendants' motion.

*See United States v. Pickard*, Nos. 00-40104-01-JTM, 00-40104-02-JTM, 2014

WL 1356053 (D. Kan. Apr. 7, 2014).  It first addressed the distinction between

the Skinner-related agency records maintained by the DEA and the CI file sealed

by the court.  The court noted that it had reviewed the records, and observed that,

while the CI file and the *Vaughn* index did not relate to identical documents, "on

the whole the two files 'significantly overlap' each other."  *Id.* at *1 (alteration

omitted) (citation omitted).  It characterized the *Vaughn* index as "precisely the

sort of careful separation and indexing" that the D.C. Circuit's decision in

*Vaughn* authorized, and found that Defendants "have shown no basis for rejecting

the *Vaughn* index itself as a sufficient itemization of the government's objections

to production."  *Id.* at *2.

The court then turned to consider the validity of the objections set forth in

---

[4]      Because the federal courts are not agencies for purposes of FOIA, Defendants argued that the court has an obligation to redact its own judicial records, potentially through the appointment of a special master, and cannot rely on the government's redactions in the form of a *Vaughn* index.

8

the *Vaughn* index, and found "no reason to vary from its earlier determination that the government has shown a compelling interest in the confidentiality of the DEA file." *Id.* In the district court's view:

> Even if no ongoing investigation exists, the government has a strong interest in preventing the disclosure of the file itself, which would have a dangerous negative effect on the ability to secure cooperation by other confidential sources in the future. The court has recognized this importance in sealing the document simultaneous with its reception. The defendants filed no challenge to this seal until long afterwards.
>
> The court further finds that the government appropriately articulates strong and compelling rationales for withholding the designated information, even if the ultimate result means that much of the file remains under seal. A careful review of the sealed DEA file confirms that it is the sort of information which is typically subjected to the highest level of confidentiality, and there is no meaningful basis for alternative or additional redactions.

*Id.* (citations omitted).

Next, the court specifically addressed our previous observation that "[t]he fact that some of the sealed information has already been made public suggests that much of the information in the DEA records could be unsealed." *Id.* at \*3 (alteration in original) (quoting *Pickard*, 733 F.3d at 1305). It determined "that the limited disclosure of some information from Skinner's participation does not justify the broad disclosure of the majority of the CI file." *Id.* After discussing two cases that we cited in support of this inference, *Mann v. Boatright*, 477 F.3d 1140 (10th Cir. 2007), and *United States v. James*, 663 F. Supp. 2d 1081 (W.D.

9

Wash. 2009), it explained:

> Neither *Mann* nor *James* involved raw files relating to confidential informants, and the court agrees with the government that it possesses a strong and compelling interest in keeping confidential the information generated by confidential informants. Accordingly, the governmental interest is far stronger than the privacy interest in *Mann* and or the interest of the sentenced defendant in *James*; in both cases the courts respectively noted that the relevant documents (whether civil complaint or plea agreement) are filed publicly as a matter of course. *James* authorized the release of "boilerplate language," statements made in open court, and the fact of the defendant's cooperation with the government. Nevertheless, it explicitly agreed to redact "the *details* of Ms. James' cooperation." [663 F. Supp. 2d at 1021] (emphasis added).

*Pickard*, 2014 WL 1356053, at *3.

Finally, the court set forth its view of the governmental interest implicated by the potential disclosure here. It concluded:

> The court finds the complete disclosure of the details of Skinner's cooperation would work substantial damage to the government by creating a chilling effect on future cooperation. The government's interest is extremely strong, and the fact that some limited information from the CI file has been referenced during the long post-conviction proceedings does not justify the wholesale release of the entire file. Additional redactions beyond those contained in the *Vaughn* index are unjustified in light of the government's interest. The court further finds that the relatively few documents which are in the CI file but not in the *Vaughn* index should remain sealed as well. In both cases, a broad release of the information would be unjustified in light of the governmental interest involved, and the government interest is sufficient to overcome the presumption in favor of public access to judicial records.
>
> Given the highly confidential nature of the informant file, the glancing and indirect nature of much of the "publication" cited

> by the defendants, and the inherent chilling effect of a release of that information on future investigations, the court finds that specific redactions beyond those identified in the *Vaughn* index are insufficient to satisfy the government interest involved. Accordingly, the court finds the defendants' Motion to Unseal shall remain denied, except as provided herein.

*Id.* at \*4 (citation omitted).

The court did, however, provide a limited exception to unseal five documents—which had already been made public—that Defendants identified in their motion to clarify.[5] Otherwise, the court denied Defendants' request to allow them individualized access to the CI file and, as noted, determined that Defendants' motion to unseal should remain denied. Defendants timely appealed.

## II

We address the legal standards governing a trial court's decision to seal judicial records. Ultimately, we conclude that we cannot rule at this time on the merits of the district court's sealing decision; in light of the controlling legal standards, the district court's explanation of the reasons for its decision is inadequate to support and facilitate meaningful appellate review. We remand for the court to more fully explicate its reasoning, consistent with the principles

---

[5] Specifically, these documents included (a) Mr. Skinner's Criminal Felony Docket for Tulsa County, Oklahoma District Court, July 31, 2006; (b) the Pottawattamie County Kansas Court order dated August 21, 2000; (c) Mr. Skinner's Criminal Felony Docket for Tulsa County, Oklahoma District Court dated March 24, 2004; (d) Mr. Skinner's Eleven-point Risk Assessment; and (e) Mr. Skinner's Confidential Source Agreement Form, DEA form 473, dated October 18, 2000. *See Pickard*, 2014 WL 1356053, at \*4.

11

discussed in this order and judgment.

A

"We review for an abuse of discretion the district court's decisions regarding whether to seal or unseal documents." *Pickard*, 733 F.3d at 1302; *see also Mann*, 477 F.3d at 1149; *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 n.28 (10th Cir. 2012) (involving a decision to seal); *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011) (addressing a decision to unseal). But we review de novo the underlying legal principles that the district court applies in considering a motion regarding sealing or unsealing. *Pickard*, 733 F.3d at 1302; *accord Ameziane v. Obama*, 620 F.3d 1, 5 (D.C. Cir. 2010); *United States v. Wecht*, 484 F.3d 194, 208 (3d Cir. 2007). "We have previously described abuse of discretion as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 773 (10th Cir. 2011) (quoting *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1205–06 (10th Cir. 2003)). "Of course, applying incorrect legal principles is an abuse of discretion." *Pickard*, 733 F.3d at 1302.

1

"A court has authority to seal documents before it, based upon the court's inherent supervisory authority over its own files and records." *Id.* at 1300. However, "[c]ourts have long recognized a common-law right of access to

12

judicial records."[6]  *Mann*, 477 F.3d at 1149; *see Nixon v. Warner Commc'ns, Inc.*,

435 U.S. 589, 597 (1978).  "The right is an important aspect of the overriding

concern with preserving the integrity of the law enforcement and judicial

processes."  *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985).

Nevertheless, the right of access is not absolute.  *See Colony Ins.*, 698 F.3d at

1241.  The court, "in its discretion, may seal documents if the public's right of

access is outweighed by competing interests."  *Helm v. Kansas*, 656 F.3d 1277,

1292 (10th Cir. 2011) (quoting *Hickey*, 767 F.2d at 708).

"In exercising this discretion, [a court] weigh[s] the interests of the public,

which are presumptively paramount, against those advanced by the parties."  *Id.*

(quoting *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980)).

And, as we explained in the prior appeal, the presumption in favor of access is

particularly strong, as here, "where the district court used the sealed documents

'to determine litigants' substantive legal rights.'"  *Pickard*, 733 F.3d at 1302

(quoting *Colony Ins.*, 698 F.3d at 1242).  As a result, "[t]he burden is on the party

seeking to restrict access to show 'some significant interest that outweighs the

presumption.'"  *Colony Ins.*, 698 F.3d at 1241 (quoting *Mann*, 477 F.3d at 1149).

"Consistent with this presumption that judicial records should be open to

---

[6]      We previously determined that the CI file that the district court
sealed in this case constitutes a judicial record.  *See Pickard*, 733 F.3d at 1302
n.5; *see also United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997)
("[W]hat makes a document a judicial record and subjects it to the common law
right of access is the role it plays in the adjudicatory process.").

13

the public, the party seeking to keep records sealed bears the burden of justifying that secrecy, even where, as here, the district court already previously determined that those documents should be sealed." *Pickard*, 733 F.3d at 1302. Thus, in this case, the government bears the burden of articulating an interest sufficient to overcome the strong presumption in favor of public access to the sealed CI file.[7]

**2**

Just as the district court has an obligawewewetion to weigh the competing interests of the parties and the public, we too are obliged to review the district court's exercise of its discretion. In a variety of different contexts, we have found reversible error where courts have failed to provide a record of their decisional process that was adequate to support and facilitate meaningful appellate review. *See, e.g.*, *United States v. Chavez-Calderon*, 494 F.3d 1266, 1268 (10th Cir. 2007) ("In order to facilitate appellate reasonableness review and to ensure that the [appropriate] factors have informed a district court's exercise of

---

[7] The government bears the burden of proof in both the common-law-access and the FOIA contexts, where it is the party resisting disclosure; however, the questions that district courts resolve in the FOIA context ordinarily are deemed issues of law—not of discretion, as in the common-law-access setting—and therefore the court's rulings are subject to the more searching de novo standard of review. *See, e.g.*, *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007) ("The federal agency resisting disclosure bears the burden of justifying withholding. Whether a FOIA exemption justifies withholding a record is a question of law that we review de novo." (citation omitted)); *accord Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1244 (10th Cir. 2009). We have no need in this case to fully explore the relationship between these two bodies of law, including the extent to which they intersect.

14

discretion, we require district courts to give reasons for their sentences."); *OCI Wyo., L.P. v. PacifiCorp*, 479 F.3d 1199, 1204 (10th Cir. 2007) ("[W]e have also cautioned that too little detail frustrates meaningful appellate review by requiring the parties and this court to guess at why the district court reached its conclusion."); *United States v. Roberts*, 88 F.3d 872, 882 (10th Cir. 1996) (per curiam) ("Without any reasoned elaboration by the district court we have no way of understanding the basis of its decision . . . . As an appellate court, we are in no position to speculate about the possible considerations which might have informed the district court's judgment."), *superseded by statute on other grounds as recognized in United States v. Franklin*, 785 F.3d 1365, 1368 (10th Cir. 2015); *Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1559 (10th Cir. 1996) ("The district court's summary disposition of this issue renders it impossible for us to review the propriety of its decision. . . . We have no informed basis for evaluating the propriety of the district court's action because in the end we are left guessing as to the court's purpose."); *Roberts v. Metro. Life Ins. Co.*, 808 F.2d 1387, 1390–91 (10th Cir. 1987) ("Where the trial court provides only conclusory findings, unsupported by subsidiary findings or by an explication of the court's reasoning with respect to the relevant facts, a reviewing court simply is unable to determine whether or not those findings are clearly erroneous." (quoting *Lyles v. United States*, 759 F.2d 941, 944 (D.C. Cir. 1985) (per curiam))).

In this case, the district court compared the sealed CI file to the *Vaughn*

index—consisting of a list of documents and associated objections that the government advanced—and concluded that it was satisfied that the CI information had been properly withheld. However, the record does not adequately reflect the court's balancing—with respect to particular documents or categories of documents—of the specific interests of the public and the government (the party opposing disclosure) relative to the factual circumstances of this case. Instead, the court relied on the government's general interests regarding confidentiality, a potential "chilling effect," and the need for law enforcement to secure the cooperation of other confidential sources in the future.

Though these matters are unquestionably, in principle, legitimate governmental interests, they are likely to be present to some degree in virtually every case where a member of the public seeks access to law-enforcement informant files. Therefore, lest the common-law presumption of access be rendered a dead letter as to this class of cases, courts cannot justify denying disclosure by endorsing such generalized governmental interests. They must analyze the government's interests in the context of the specific case—with respect to particular documents or categories of documents—and explicitly undergird their conclusions with fact-specific analysis. Absent a particularized analysis of this type, a district court has no sound legal basis for ruling on the sealing question. Likewise, without a district court expressly conducting such an analysis on the record, we cannot engage in meaningful appellate review of its

16

sealing decision. *Cf. Wiener v. FBI*, 943 F.2d 972, 987–88 (9th Cir. 1991) ("'Disclosure of the factual and legal basis for the trial court's decision is especially compelling in FOIA cases.' . . . 'The reviewing court should not be required to speculate on the precise relationship between each exemption claim and the contents of the specific document[s].'" (alteration in original) (quoting *Van Bourg, Allen, Weinberg & Roger v. NLRB (Van Bourg I)*, 656 F.2d 1356, 1357, 1358 (9th Cir. 1981) (per curiam))). And that is regrettably the state of play here. In ruling that the government had offered enough to prevail on the sealing issue, the court provided no particularized explanation that was rooted in the specific documents and facts of this case.

Furthermore, we cannot cobble together the elements of such a particularized explanation by reference to the *Vaughn* index that the district court accepted as the foundation for its ruling. That is because the index does a very poor job of revealing in a particularized fashion the government's interests regarding the disclosure of specific documents or categories of documents, and, in addition, does not shed meaningful light on the question that we gave high salience in our earlier *Pickard* decision—that is, it does not meaningfully convey the government's position regarding what documents have "already been made public," which would "suggest[] that much of the information in the DEA records

17

could be unsealed." 733 F.3d at 1305.[8]

Notably, in the FOIA litigation in the Northern District of California, the district court rejected as inadequate the exact *Vaughn* index that the district court relied on in this case. It characterized the index as "conclusory and circular" and "supremely unhelpful." *Pickard*, 2014 WL 1868841, at *1, *4. Continuing its assessment of the index, the court stated, "[I]t provides neither the Court nor [Mr. Pickard] with any useful information about the content of the documents or how the claimed exemptions apply." *Id.* at *4. As a result, "[i]f [Mr. Pickard] or the Court wishes to do anything with such representations other than unquestioningly accept them, there is no way to do so." *Id.* In light of what the court perceived as the *Vaughn* index's gross inadequacy, it ordered the government to submit an adequate version. We agree with the California district court's disapproving

---

[8] As noted, the government submitted here a *Vaughn* index that it had initially prepared in connection with FOIA litigation involving Mr. Pickard in the Northern District of California. We recognize that at issue in both the FOIA and common-law-access contexts is the public's right of access to materials that have been shielded from disclosure. We do not question, as a general matter, that under certain circumstances, the government may prevail in carrying its burden in the common-law-access context by submitting a *Vaughn* index (as well as perhaps a related declaration). However, in this case, the government's *Vaughn* index was woefully inadequate to shed light on the variables relevant to the public-access question. Moreover, the utility and responsiveness of the *Vaughn* index certainly was not bolstered by the fact that the universe of Skinner-related documents contemplated by the index was not precisely the same as the CI file.

assessment of the inadequacies of the *Vaughn* index. Consequently, we could not successfully use it to fill the gaps in the district court's generalized reasoning here.

Furthermore, though the CI file is part of the appellate record, we decline to review the documents therein and conjure up particularized governmental interests and concerns that might justify nondisclosure of them. Such an exercise would be:

> (1) <u>patently speculative and conjectural</u>, *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 944 (10th Cir. 1990) ("Neither the district court's ruling from the bench nor the subsequent written order make clear which documents the court believed were exempt as 'trade secrets,' and which documents were exempt on other grounds. Any attempt on our part to determine which of defendants' seven proposed classifications of the enormous number of documents at issue were adopted by the district court as trade secrets would be sheer speculation.");
> (2) <u>logically at odds with the presumption in favor of unsealing judicial records, which requires the party opposing unsealing (i.e., the government)</u> "to show 'some significant interest that outweighs the presumption,'" *Colony Ins.*, 698 F.3d at 1241 (emphasis added) (quoting *Mann*, 477 F.3d at 1149); and

19

(3) <u>at the very least, an inapt role for an appellate tribunal</u>,[9] *see, e.g.*, *New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1290–91 (10th Cir. 2008) ("We prefer to assess the justification [for a bar order] in the first instance on the basis of concrete facts found by the district court, and with the assistance of the district court's full consideration and discussion of all of the relevant facts of the instant case and a full discussion of the relevant persuasive authorities and the underlying reasons and policies justifying whatever order the district court ultimately approves." (alteration in original) (quoting *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1312 (11th Cir. 2004))); *see also Davis v. United States*, 192 F.3d 951, 961 (10th Cir. 1999) ("The district court's memorandum order neither states a set of facts relevant to the indispensability analysis nor weighs the factors argued by the parties. This court

---

[9] Relatedly, it would be particularly imprudent to undertake such an initial analysis where our standard of review is abuse of discretion because this standard allows for a range of reasonable outcomes. *Cf. United States v. Mumma*, 509 F.3d 1239, 1245 (10th Cir. 2007) ("[A]s we have previously explained, a *range* of reasonable sentences may exist in any given case. The reasonableness of one sentence does not, therefore, necessarily render a different sentence unreasonable by comparison." (citation omitted)); *United States v. Angel-Guzman*, 506 F.3d 1007, 1020 (10th Cir. 2007) ("A decision upholding a sentencing court's discretion to sentence below the Guidelines is not precedent for holding that another sentencing court abuses its discretion when it declines to do so.").

should not and thus will not perform the fact-finding function reserved for the district courts.").

In sum, we conclude that the district court's generalized analysis of the sealing question does not provide us with an adequate foundation for appellate review, and we decline to undertake in the first instance a sealing analysis to resolve the question. Accordingly, we are constrained to vacate the district court's order and remand for further proceedings—notably, for a fuller exposition of the court's reasoning.

**B**

As noted, on remand, the district court must analyze the government's interests in the context of this specific case—with respect to particular documents or categories of documents in the CI file—and explicitly rest its sealing conclusions on that fact-specific analysis. Given the current state of the record, the court will encounter—at the very least—significant hurdles in accomplishing this task. As noted, the *Vaughn* index in the record—which ostensibly embodies the government's primary statement of interests—is woefully inadequate. On remand, the government should be given an opportunity to supplement its showing regarding sealing or unsealing the documents in the CI file. As we noted in an analogous context in *Anderson*,

> The district court is entitled to considerably more assistance . . . than it received in this case. The burden of adequately describing the documents and of defining any narrowly-drawn categories that may be used to deal with similar documents as a

21

group should normally be placed in the first instance on the agency or other party claiming protection for the documents requested. The district court's task is essentially one of review, but neither it nor the appellate court can adequately fulfill this function without more particularized descriptions than those that were provided here.

*Anderson*, 907 F.2d at 944 n.10.

If the government elects to supplement its showing by providing a new *Vaughn* index (with or without an explanatory sworn declaration) it would be well-advised to heed the counsel provided by the California district court when it rejected the *Vaughn* index currently before us:

> In *W[ie]ner*, [943 F.2d] at 984, the Ninth Circuit found insufficient the Vaughn Index the FBI prepared in response to a FOIA request about John Lennon, and explained what should have been done *as to a particular document*:
>
> > Without violating the privacy interests of the informant or the third party, the FBI could have stated that HQ-8 recites information provided by a third party to an FBI informant detailing the third party's knowledge of several activists and protest activities planned at the 1972 Republican National Convention, discussing the possibility that John Lennon would organize a series of concerts to raise money to finance the activity, and describing rivalries and jealousies within activist organizations.
>
> *Id.* at 984. Boilerplate explanations for withholding are improper, and efforts must be "made to tailor the explanation to the specific document withheld." *Id.* at 978–79.

*Pickard*, 2014 WL 1868841, at *4–5 (emphasis added).[10]

In this regard, we are permitted to take judicial notice of the records of other courts. *See, e.g.*, *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("Although we are not obliged to do so, we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *see also St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to

---

[10] In this same vein, the government should be alert to some of the *Wiener* court's more pointed criticism of the *Vaughn* index:

> The index fails to tie the FBI's general concern about disclosure of confidential sources to the facts of this case. The index does not describe any particular withheld document, identify the kind of information found in that document that would expose the confidential sources, or describe the injury to national security that would follow from the disclosure of the confidential source of the particular document. The FBI must have made such an analysis in concluding that disclosure of some informants or classes of informants would damage national security and disclosure of others would not. Yet none of the information and analysis necessarily considered is made available to Wiener or the court. The index simply relies on general assertions that disclosure of certain categories of facts may result in disclosure of the source and disclosure of the source may lead to a variety of consequences detrimental to national security.

*Wiener*, 943 F.2d at 981 (footnotes omitted).

23

matters at issue.").  And, having elected to do so, we are aware that (after one more failed attempt), the government was able to produce a *Vaughn* index in the California FOIA litigation that satisfied the district court's specificity concerns; notably, the index directly addressed a question similar to the one that we gave prominence in *Pickard—viz.*, what documents had already been officially released in the public domain.  *See Pickard v. Dep't of Justice*, No. 06-cv-00185-CRB, slip op. at 3 (N.D. Cal. Aug. 27, 2015) ("These descriptions are sufficient to inform Pickard of why a particular document is exempt from disclosure and afford him an opportunity to advocate for its release. . . .  Moreover, the government responded to [the magistrate's] request that it explain which documents have been released to the public."  (citations omitted)); *see also Pickard v. Dep't of Justice*, No. 06-cv-00185-CRB, 2015 WL 926183, at *1 (N.D. Cal. Feb. 19, 2015) (stating, in rejecting the second *Vaughn* index, "After reviewing the most recent Vaughn index and the responsive documents, this Court finds that the index—even when viewed in combination with the government's supporting declaration—fails to sufficiently describe the withheld documents in adequate detail so as to allow Pickard to challenge the government's claimed exemptions.").  The government would be wise to demonstrate a similar willingness here to offer a particularized justification for its efforts to keep the CI file documents sealed.

At bottom, the government bears the burden of demonstrating "some

24

significant interest that outweighs the presumption" in favor of public access. *Colony Ins.*, 698 F.3d at 1241 (quoting *Mann*, 477 F.3d at 1149).  On remand, the district court must assess the record with an eye toward providing a particularized analysis—one that is suitable for possible appellate review—of the government's interests in sealing the documents in the CI file.  In that analysis, the court may reference the explanations that the government provides—through a new *Vaughn* index or otherwise—and also, with appropriate care and circumspection, point to individual documents or categories of documents in the CI file itself.  The court should then rule on the sealing questions as they relate to the documents in the file.  *See Wiener*, 943 F.2d at 988 ("After receiving an adequate *Vaughn* index and conducting any additional proceedings the district court deems necessary on remand, the court must 'state in reasonable detail the reasons for its decision as to each document in dispute.'"  (quoting *Van Bourg I*, 656 F.2d at 1358)).

Our intention is not to choreograph every step of the district court's decision-making process or establish unnecessary boundaries on its exercise of discretion.  However, in weighing the interests of the parties and the public, we underscore that the asserted interests for sealing cannot be generic interests that would apply with equal force to every case.  The government must articulate specific interests that apply in the context of *this* case, and the district court must balance those interests against the public's interest in access.

25

## C

Finally, Defendants have requested that (1) a copy of the CI file that was transmitted to our court be provided to Defendants' counsel, subject to a non-dissemination order, and (2) the "Risk Assessment" portion of the file, which the district court unsealed, be filed publicly and placed on the docket for access by the parties. In light of our decision to remand this action for further substantive analysis, we leave the resolution of these requests in the first instance to the discretion of the district court.

## III

For the foregoing reasons, we **VACATE** the district court's order and **REMAND** for further proceedings.

Entered for the Court

JEROME A. HOLMES
Circuit Judge

26