FILED
United States Court of Appeals
Tenth Circuit

May 21, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

WILLIAM LEONARD PICKARD,

      Defendant - Appellant,

and

CLYDE APPERSON,

      Defendant.

_____

No. 17-3268
(D.C. No. 5:00-CR-40104-JTM-1)
(D. Kan.)

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CLYDE APPERSON,

      Defendant - Appellant,

and

WILLIAM LEONARD PICKARD,

      Defendant.

No. 17-3269
(D.C. No. 5:00-CR-40104-JTM-2)
(D. Kan.)

## ORDER AND JUDGMENT[*]

Before **HARTZ**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

William Leonard Pickard and Clyde Apperson (collectively "the Defendants") challenge the district court's denial of their motions under Federal Rule of Civil Procedure ("Rule") 60 and *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), *overruled on other grounds by Standard Oil Co. of California v. United States*, 429 U.S. 17 (1976) (per curiam), alleging that the government committed fraud on the court during and after their 28 U.S.C. § 2255 proceedings.

Specifically, the Defendants allege eleven claims of error as to the district court's denial of their fraud-on-the-court motions, ranging from the allegedly premature timing of the district court's ruling to various facets of the district court's legal analysis. However, as we explain below, these claims either lack merit or allege, at most, harmless error. Thus, exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's judgment.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

## A

In 2003, the Defendants were each convicted of one count of conspiring to manufacture and dispense lysergic acid diethylamide ("LSD") in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and one count of possessing LSD with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Gordon Todd Skinner, a criminal associate of the Defendants, was "[a]n important witness for the prosecution." *In re Pickard*, 681 F.3d 1201, 1202 (10th Cir. 2012).

Mr. Pickard was sentenced to life imprisonment, and Mr. Apperson was sentenced to 360 months' imprisonment. In 2006, this court affirmed the Defendants' convictions and sentences on direct appeal, *United States v. Apperson*, 441 F.3d 1162, 1175(10th Cir. 2006), and in 2007 the Supreme Court denied the Defendants' petitions for certiorari, *Pickard v. United States*, 549 U.S. 1150 (2007); *Apperson v. United States*, 549 U.S. 1117 (2007);

## B

In 2008, the Defendants filed largely identical motions seeking relief under 28 U.S.C. § 2255. The "centerpiece" of these motions was the claim that the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), "by suppressing the criminal

and informant backgrounds of certain witnesses," including and especially Mr. Skinner. *In re Pickard*, 681 F.3d at 1203 (quoting *United States v. Pickard*, 2009 WL 939050, at *5 (D. Kan. Apr. 6, 2009)). "In particular, [the] Defendants argued that the government had failed to disclose relevant files from agencies other than the federal Drug Enforcement Administration (DEA)." *Id.* More specifically, the Defendants argued in part that "the government suppressed Skinner[']s underlying criminal activity leading to his cooperation in prior cases" and that such suppression included "Skinner's entire criminal investigative history by FBI [i.e., the Federal Bureau of Investigation], Customs [i.e., U.S. Customs and Border Protection], and IRS [i.e., Internal Revenue Service] since 1983 through the present time," as well as "multiple federal agencies' investigative files involving Skinner" in the Organized Crime Drug Enforcement Task Force ("OCDETF") matter of "Operation White[ ]Rabbit."[1] Aplts.' App., Vol. I, at 81 82 (Mr. Pickard's § 2255 Mot., filed Jan. 7, 2008) (capitalization and bold-face font omitted).

In response, the government stated in relevant part that it "provided defendants with Skinner's complete criminal history" and "was unaware of these

---

[1]    *See, e.g.*, Bryan E. Gates, INTERNAL REVENUE MANUAL   ABRIDGED & ANNOTATED § 9.1.1.3.1.1.3, Westlaw (database updated Mar. 2020). ("Organized Crime Drug Enforcement Task Force (OCDETF)     investigations involving members of high-level drug trafficking organizations authorized by a regional multi-agency OCDETF committee.").

4

matters [involving Skinner] *and each of the alleged matters involved agencies not involved in this investigation.*" *Id.* at 197 (Resp., filed June 30, 2008) (emphasis added). Later in the same filing, the government stated that "everything in the DEA files w[as] provided to defense counsel pursuant to the oral order of the court," that "[a]ny cooperation by, or investigation of, Skinner by unrelated agencies were unknown," and that "there was no reason to look beyond the information provided by [the] DEA." *Id.* at 203; *see also In re Pickard*, 681 F.3d at 1203 (characterizing the government's response to the Defendants' § 2255 motions as stating that "no agency other than the DEA was involved in the LSD investigation" and that it was "not aware of Skinner's involvement with any agency besides the DEA").

In connection with their § 2255 motions, the Defendants subsequently sought an order requiring the government to provide the OCDETF proposals for Operation White Rabbit (and any related OCDETF proposals) and to identify agencies other than the DEA that participated in these OCDETF investigations. The government asked that this motion be denied as premature because the Defendants had not been granted leave to conduct discovery.

In 2009, the district court denied the § 2255 motions and the Defendants' associated request for the OCDETF proposals and identification of other agencies. In denying the request for the proposals and the identification of agencies, the

5

court stated that it "continue[d] to believe that the DEA was the agency responsible for handling this case," that "[t]he testimony provided at trial failed to demonstrate any significant involvement by the FBI or any other agency in the investigation of this case," and that the Defendants had "failed to point to any evidence showing any involvement by other agencies in the investigation of this case." Aplts.' App., Vol. IV, at 927 28 (Mem. & Order, filed Apr. 6, 2009). The court therefore saw "no reason to examine the OCDETF proposal in this case, even if one exists." *Id.* at 928.

As to § 2255 relief, the district court stated that "[m]ost of the evidence noted by the [D]efendants would simply have been cumulative to other evidence that was offered to impeach Skinner's testimony." *Id.* at 908. The district court opined that the Defendants "overstated Skinner's importance to the verdicts in this case"; notably, it reasoned that, because the DEA had its own concerns about Mr. Skinner's credibility, it made "considerable efforts" during its investigation to corroborate his statements. *Id.* at 900 01. The district court also noted the "wealth of materials" concerning Mr. Skinner that the government provided the Defendants before trial, *id.* at 901 02, and that Mr. Skinner had been subjected to "extensive[]" cross-examination at trial, admitting a wide variety of criminal and dishonest acts. *Id.* at 903 04. The district court added that the government had produced "overwhelming evidence" of the Defendants' guilt. *Id.* at 908. The

6

district court denied a certificate of appealability ("COA"), and a panel of this court did the same.

## C

In the time between the district court's denial of a COA on the Defendants' § 2255 motions and the panel's denial of a COA on those motions, the Defendants filed two motions in district court under Rule 60(b), Rule 60(d), and *Hazel-Atlas*[2] seeking relief from the denial of their § 2255 motions.  The first motion primarily contended that the district court had failed to address several of the arguments the Defendants made during the § 2255 proceedings.  The second motion (and a small portion of the first) contended that the Defendants had newly discovered evidence showing that federal agencies other than the DEA actually were involved in investigating the Defendants' drug-related activities and that these agencies might have additional undisclosed impeachment evidence against Mr. Skinner. Specifically, this newly discovered evidence allegedly consisted of "substantive undisclosed FBI and IRS records" that showed the existence of multi-agency OCDETF investigations ("Operation White Rabbit" and "Operation White Rabbit

---

[2]    In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, *supra*, "the Supreme Court held that a federal court possesses inherent power to vacate a judgment obtained by fraud on the court."  *United States v. Baker*, 718 F.3d 1204, 1206 (10th Cir. 2013) (citing *Hazel-Atlas*, 322 U.S. at 248 49); *see also* Douglas R. Richmond, *Critical Contours of Fraud on the Court*, 37 REV. LITIG. 1, 5 (2018) (noting that "most of the principles that govern fraud on the court claims derive from the decision in *Hazel-Atlas*").

East") and a High Intensity Drug Trafficking Area ("HIDTA") investigation involving the DEA, IRS, and FBI.[3]  *Id.*, Vol. V, at 1111  45 (Rule 60(b)(2) and 60(b)(3) Mot., filed Apr. 5, 2010).  The Defendants further contended that the lead attorney for the OCDETF investigations was also the lead prosecutor in the Defendants' prosecution and that the government's failure to disclose records related to the investigations was unexplained.

Thus, the Defendants alleged, the government committed fraud on the court during the § 2255 proceedings by "affirmatively disavowing any substantive participation by agencies other than DEA in the investigation," "thereby purposely elud[ing] its responsibility to access and provide records on the government witnesses[] investigative histories, and knowingly avoid[ing] its *Brady* obligations."  *Id.* at 1136.  The Defendants sought an evidentiary hearing, production of any documents necessary to show the extent of the fraud, and, ultimately, a ruling that the "government has shown a pattern and practice of intent to deceive the court, concerning undisclosed federal and state agencies' participation records."  *Id.* at 1144.

---

[3]     "The High Intensity Drug Trafficking Area (HIDTA) Program was established to provide assistance to Federal, state and local law enforcement agencies operating in areas most adversely affected by drug trafficking."  Gates, *supra*, § 9.5.7.3.12.

The district court denied on the merits the Defendants' claims concerning its alleged failure to address certain § 2255 arguments, after ruling that these claims were properly raised via Rule 60(b) motions. However, it transferred claims concerning the newly discovered evidence to the Tenth Circuit, ruling that they were disguised second or successive requests requiring circuit authorization.[4]

In March 2011, the Defendants filed in this court a Motion for Remand contending that their claims were not second or successive. They also appealed from the district court's ruling insofar as it denied them Rule 60(b) relief. Around the same time, the Defendants filed a Motion to Unseal Documents in district court. In relevant part, they sought to unseal several DEA records relating to Mr. Skinner that the district court had previously sealed during the Defendants' trial, including Mr. Skinner's Confidential Informant ("CI") file.

In December 2011, the government filed a Motion for Additions to the Record in district court, asking that it designate several documents for inclusion in the record in then-pending appeals. Among the motion's attachments was a December 2009 declaration by San-Francisco-based DEA Agent Karl Nichols stating that:

---

[4] *See, e.g.*, 28 U.S.C. § 2255(h) (providing for circuit-court approval under limited conditions of second or successive § 2255 motions); *United States v. Nelson*, 465 F.3d 1145, 1148 (10th Cir. 2006) (same).

- in October 2000, he initiated the investigation of LSD manufacturing by the Defendants;

- to his knowledge, there was "no other law enforcement agency that was investigating this LSD manufacturing organization [of the Defendants] prior to October 2000";

- the investigation was "included under the OCDETF umbrella" with the designations Operation White Rabbit and Operation White Rabbit East because the Defendants' operation was deemed "significant" by the DEA and U.S. Attorney's Offices in San Francisco and Kansas;

- inclusion in the OCDETF program requires at least two "participating agencies"   with the DEA and the IRS being the participating agencies for Operation White Rabbit, and the DEA and the United States Marshals Service ("USMS") being the participating agencies for Operation White Rabbit East;

- for both investigations, the DEA was "the lead agency" (sharing that role with the IRS for Operation White Rabbit);

- the DEA performed "nearly all" of the investigative work in both investigations, and "involvement by other agency personnel was incidental or minimal";

- for example, the IRS analyzed certain tax records in connection with "the money laundering investigation" and in preparation for trial, and it also participated in DEA interviews, but notably "wrote no IRS reports or investigative memoranda," and the only investigative reports in IRS files were ones "generated by DEA personnel"; and

- the FBI "was not a participant in either OCDETF investigation," but did allow the use of its laboratory to "enhance the audio on taped undercover recordings" between the Defendants and Mr. Skinner.

*Id.*, Vol. VI, at 1252 57 (Decl. of Karl Nichols, dated Dec. 18, 2009).

Agent Nichols further stated that he had reviewed documents obtained by Defendants under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, and the claims they had made, and he knew of "no other agency participating in the . . . OCDETF investigations" other than those previously described, nor did he know of any law enforcement personnel who might have prepared a report

11

"pertinent to the investigation" that had not been disclosed prior to or during trial. Aplts.' App., Vol. VI, at 1256 57.

In June 2012, this court ruled that any purported "Rule 60(b)" claims alleging that the prosecution violated its *Brady* or *Giglio* duties *at trial* were actually second or successive claims asserting a new basis for relief from the conviction. *See In re Pickard*, 681 F.3d at 1205. The court denied leave to proceed with such claims. The court reached a different conclusion, however, regarding claims that the prosecution "improperly withheld information during the § 2255 proceedings when the prosecutor said that no agency other than the DEA participated in the investigation." *Id*. The court understood the Defendants to be asserting that "the prosecutor's statement prevented their discovery of the involvement of other agencies and, most pertinent to their § 2255 claim, thereby prevented them from showing that those agencies had additional information about Skinner that could have been used to impeach him at trial." *Id.* The court ruled that this claim was a "true" Rule 60(b) motion challenging a defect in the integrity of the habeas proceedings, and, as such, the Defendants were not required to obtain appellate-court authorization, which would have been required for a second or successive § 2255 motion.[5]

----

[5] *See, e.g.*, *Spitznas v. Boone*, 464 F.3d 1213, 1215 16 (10th Cir. 2006) (discussing the characteristics of a "true" Rule 60(b) motion).

This Tenth Circuit panel thus remanded for the district court to "consider in the first instance Defendants' claim that the prosecutor's false statement improperly prevented them from obtaining relevant discovery in the § 2255 proceedings." *Id.* at 1207. In the course of its ruling, the panel noted that the government "denie[d] that it made any false statement in the § 2255 proceedings," but notably the court opined that its task was "not to ascertain the truth of Defendants' allegations but to decide which tribunal should resolve the matter." *Id.* at 1205.

**D**

On remand from *In re Pickard*, the Defendants asked the district court either to determine outright that the government attempted to commit fraud on the court during the § 2255 proceedings or to hold an evidentiary hearing on that issue. For its part, the government moved to supplement the record. The supplementary materials included (1) the Nichols declaration discussed previously; (2) a letter from an IRS special agent stating that querying the Defendants' names in the IRS's investigative database system had resulted in no hits, indicating that "IRS-Criminal Investigation never had an open investigation on either [Mr. Pickard or Mr. Apperson]," Aplts.' App., Vol. VI, at 1247 (Steenson Letter, dated Oct. 20, 2011); (3) a letter from the Midwest HIDTA stating that Special Agent Roger Hanzlik, assigned to the "Clandestine Lab

13

Group" during Operation White Rabbit, did not use or request assistance from the "HIDTA/Investigative Support Center," *id.* at 1248 (Robacker Letter, dated Oct. 25, 2011); (4) a letter from the FBI reporting that Mr. Pickard was not investigated "in the matter of" a specific FBI case number used as a "control" file for OCDETF matters, *id.* at 1249 50 (Pritchett Letter, dated Oct. 25, 2011); and (5) a letter from the Department of Justice stating that OCDETF is "not an investigative agency," but simply provides funding for personnel positions and other expenses to agencies that perform investigations, *id.* at 1259 (Callahan Letter, dated Nov. 30, 2011).

The Defendants also moved to supplement the record with three records obtained through FOIA requests. The first took the form of a two-page November 2001 "Interoffice Memorandum" located in an FBI case file and bearing the subject line "William Leonard Pickard." *Id.* at 1332 34 (Ex. 1, filed Oct. 9, 2012). Nearly all of the document was withheld by the government from disclosure, but it described "earlier discussions" and "our intelligence on the above" and noted that information contained in the memorandum was confidential under a mutual legal assistance treaty. *Id.* at 1333 34. It further stated that the memorandum's author had also "spoken to an officer" in Antigua. *Id.* at 1334. The remaining two documents were four pages of IRS Criminal Investigation reports from the 2001 02 period that identified Mr. Pickard as the subject of the

14

reports, discussed how he was alleged to be a "major LSD trafficker" engaged in laundering drug proceeds, and appeared to calculate a "provable money laundering amount" of $500,000. *Id.* at 1336 39 (Ex. 2, filed Oct. 9, 2012).

In November 2012, the Defendants then each filed a "Rule 60(b)-(d) and *Hazel Atlas* Motion Regarding Fraud Upon the Court on Remand." *Id.* at 1345 71 (Mot. Re: Fraud, filed Nov. 2, 2012). The motion contended that the government's attempts to defraud the court were still ongoing, as evidenced by the statement in Agent Nichols's affidavit that the involvement by other agencies in the OCDETF investigations was "incidental or minimal," *see id.* at 1347 a statement that the Defendants deemed unworthy of belief.

Thereafter, proceedings directly concerning fraud on the court largely fell by the wayside for several years. Earlier in 2012, the district court had denied the Defendants' Motion to Unseal the CI file and related documents. On appeal, in 2013, this court ruled that the district court had applied the wrong legal standard and remanded for reevaluation. *United States v. Pickard*, 733 F.3d 1297, 1305 (10th Cir. 2013). On remand, the district court granted the Motion to Unseal in part, ordering that the Defendants could supplement their motion alleging fraud on the court once the sealed material had been produced in redacted form. Litigation on the propriety of the district court's order and whether the government had fully complied with it consumed the next several years. Notably,

15

a panel of this court ruled that the district court's analysis of the sealing issues was generalized and inadequate and remanded again for further consideration. *United States v. Apperson*, 642 F. App'x 892, 893 (10th Cir. 2016) (unpublished).

In the order at issue in this appeal, filed on November 16, 2017, the district court first ruled that the government had not shown that the DEA's confidential informant file should remain under seal. Then, following "a th[o]rough review of the now-unsealed CI file," the court concluded in a section entitled "Rule 60(b) and related fraud claims" that the Defendants' "claims of fraud" could be resolved on the "existing record." Aplts.' App., Vol. VIII, at 1607 (Mem. & Order, filed Nov. 16, 2017).

More specifically, the district court denied the claims and also denied an evidentiary hearing, opining that the materials before the court "conclusively establish no fraud occurred." *Id.* at 1607. The court addressed Agent Nichols's statement concerning "incidental or minimal" participation, ruling that the Defendants had given no "credible reason" to believe that the statement was false. *Id.* at 1608. The court reasoned that, although OCDETF guidelines require inter-agency coordination and cooperation, it does not follow that "*every* particular investigation possibly funded by HIDTA or potentially connected with OCDE[TF] *must* involve personnel from multiple agencies." *Id.* The district court added that the Defendants otherwise merely cited "publicly available information"

16

concerning the general operation and purpose of these programs, and that Agent Nichols's statements were "corroborated by other submissions made by the government." *Id.* at 1608 09. The district court further opined as follows:

> The defendants have not shown any reason to believe that (1) the DEA was not the only agency with any *substantive* role in investigating their case, (2) the government knew that its representations to the court were false, (3) any such misrepresentation affected the trial in any substantive way, or (4) any resulting miscarriage of justice.

*Id.* at 1610 (emphasis added). Thus, the district court, after having "searched the extensive documentary record, including the CI file," did not find "any support for a claim of fraud in the § 2255 proceedings." *Id.* at 1610 11.

Though achieving victory on the merits of the Defendants' fraud-on-the-court motions, the government expressed concern about the unsealing of the DEA CI file and filed a notice of appeal concerning the court's November 16 order and successfully moved the court to stay its ruling unsealing the CI file pending the government's appeal.

For their part, the Defendants cross-appealed from the November 16 order, which had denied them relief on the merits of their fraud-on-the-court claims.[6]

---

[6] In support of their appeals, the Defendants have filed two motions to supplement the record one in August 2018 and the other in March 2019. We **deny** the former and **grant** the latter.

First, in August 2018, Defendants moved to supplement the record on
(continued...)

17

[6](...continued)
appeal with one page of a 2011 government appellate filing from *In re Pickard*.
In relevant part, that page includes a statement acknowledging that the
government "*did not* provide reports from [Operation White Rabbit] to the
[D]efendants" because that investigation, as distinct from Operation White Rabbit
East, was "primarily a money laundering investigation based in California" that
was "not relevant to the charges faced by the [D]efendants in the District of
Kansas." *See, e.g.*, Mot. to Suppl. R. on Appeal at 5 (10th Cir. Aug. 22, 2018)
(continuous pagination).  The government's filing was stricken in January 2012 as
oversized, and it was ultimately replaced with one that did not contain that
statement.  However, this proposed supplement is problematic because the
Defendants do not represent that it was presented to the district court in support
of their fraud-on-the-court claims.  *See, e.g.*, *Cornhusker Cas. Co. v. Skaj*, 786
F.3d 842, 862  63 (10th Cir. 2015) ("We undoubtedly have discretion to deny a
motion to supplement the record on appeal when the materials sought to be added
to the record were never before the district court.").  Moreover, the statement
contained on this one page   as well as the government's omission of this
statement from its properly sized brief   has no bearing on our resolution of the
Defendants' fraud-on-the-court claims.  Indeed, the government acknowledged in
its brief in this case that the facts underlying the statement in the one page are
correct.  *See* Aplee.'s Resp. Br. at 10 n.3 ("The government did not provide
reports from [Operation] White Rabbit West to Defendants in this case because
that investigation was not relevant to the charges faced by Defendants in the
District of Kansas, where they were not charged with money laundering.").
Therefore, we **deny** the August 2018 motion.

Next, as for the Defendants' March 2019 motion, the Defendants seek to
put before us six documents that they claim are pertinent to arguments that they
make in their reply brief.  The first five documents are district-court pleadings.
As such, though apparently omitted from the Defendants' appendix, they are
technically already part of the record on appeal, given that they are contained in
the district court's files.  *See, e.g.*, *Milligan-Hitt v. Bd. of Trs.*, 523 F.3d 1219,
1231 (10th Cir. 2008) (clarifying the "confusion about the relationship between
the appendix and the record").  And, the sixth and final document is a filing from
*In re Pickard*, of which we are free to take judicial notice.  *St. Louis Baptist
Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979)
("Judicial notice is particularly applicable to the court's own records of prior
(continued...)

Subsequently, the government filed a notice of its intention to comply with the unsealing portion of the court's November 16 order.[7]  And, on the government's motion, we dismissed its appeal.[8]  Thus, remaining before us are only the Defendants' appeals.[9]

---

[6](...continued)
litigation closely related to the case before it.").  Accordingly, though the benefit is marginal, for convenience's sake, we **grant** the March 2019 motion to supplement.

[7]  After some filings in the district court concerning the permissible scope of the government's redactions to the CI file, the court declared that the government's proposed redactions conformed to its November 16 order, and a CI file with these redactions was filed in the district court in February 2019.

[8]  On November 30, 2018, the government moved us for leave to file under seal a supplemental appendix containing an unredacted copy of the DEA's CI file on Mr. Skinner.  About one month later, the government indicated that   with the district court's approval   it was redacting certain "private identifying information" from this CI file, and now was seeking leave to file with this court, without sealing, a copy of the CI file incorporating these redactions. Suppl. to Mot. to Conventionally File Aplee.'s Suppl. App. Under Seal at 3, 5 (10th Cir., filed Dec. 17, 2018); *see id.* at 5 ("To clarify, the government will not be asking that the proposed supplemental appendix, consisting of the CI file bearing the authorized redactions, be sealed.").  By an order, dated February 20, 2019, this court granted the government's motion insofar as it sought leave to file, without sealing, a supplemental appendix containing a redacted version of the CI file, and the government filed that supplemental appendix six days later. Accordingly, we deem the portion of the government's initial motion seeking permission to file under seal an unredacted version of the DEA's CI file on Mr. Skinner to be withdrawn, and we do not consider the matter further. *Cf. Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1165 n.2 (10th Cir. 2014) (stating that this court had "no occasion to rule on [a motion]" where that motion was withdrawn at oral argument).

[9]  Our caselaw instructs that an appeal from the denial of a "true" Rule
(continued...)

19

## II

We first address, and reject, the Defendants' contention that the district court ruled prematurely on their fraud-on-the-court claims by ruling before the Defendants had an opportunity to supplement their claims using information from the CI file on Mr. Skinner. *See, e.g.*, Aplts.' Opening Br. at 43 45.

In February 2014, the district court partially granted the Defendants' motion to unseal the DEA's CI file on Mr. Skinner. The district court's order stated that after the government produced the file in proper form, the Defendants would be permitted to supplement their claims regarding fraud during the § 2255 proceedings. Aplts.' App., Vol. VI, at 1386 (Mem. & Order, filed Feb. 26, 2014) "Following the production of the DEA file, and to the extent such information may augment their grounds for relief as asserted in their existing Rule 60(b) motion on the issue of fraud during the § 2255 proceedings . . ., the defendants may supplement their earlier pleadings . . . ." (citations omitted)). But protracted litigation concerning access to the CI file ensued, and this litigation was still

---

[9](...continued)
60 motion requires a COA. *See Spitznas*, 464 F.3d at 1217 18 ("If the district court correctly treated the motion (or any portion thereof) as a 'true' Rule 60(b) motion and denied it, we will require the movant to obtain a [COA] before proceeding with his or her appeal."). We treat the Defendants' notices of appeal as requests for a COA and grant them a COA as to the district court's rejection of their fraud-on-the-court claims. *See, e.g.*, *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (noting that "the Court of Appeals should have treated the notice of appeal as an application for a COA").

ongoing when the district court denied the fraud-on-the-court claims.  Though the court expressly stated that it only denied those claims "[a]fter a th[o]rough review of the []unsealed CI file," *id.*, Vol. VIII, at 1607, the Defendants were not given the opportunity to supplement their claims or augment their grounds of relief on the basis of that file.

The Defendants now contend that the district court's order denying their fraud-on-the-court claims conflicts with its earlier order granting them leave to supplement.  However, while the Defendants reference    in very cursory fashion and without specificity    various arguments that they say they could have added to their Rule 60 motions once they had an opportunity to review the CI file, they make clear that their claim of error here concerns more broadly a potential inconsistency between the district court's order indicating it would permit them to supplement and its subsequent order denying their motions without first providing leave to supplement.  *See* Aplts.' Reply Br. at 36 37 (arguing that "details of Appellants['] claims are not required for this Court to determine the district court order was premature, and in conflict with its prior Order of February 26, 2014[,] upon which Appellants continued to rely while awaiting for five years after the order [of] specific documents from the CI file"); *cf.* Suppl. to Aplts.' Obj. to Gov's Mot. to Conventionally File Suppl. App. under Seal (10th Cir., Dec. 26,

21

2018) ("Appellants argue that the issues on appeal do not concern the CI File, which long has been the subject of entirely separate proceedings.").

The denial of a motion for leave to supplement is reviewed for abuse of discretion. *See, e.g.*, *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005) ("We review a denial of a motion to supplement a complaint for abuse of discretion."); *Carter v. Bigelow*, 787 F.3d 1269, 1278 (10th Cir. 2015) ("We review the district court's denial of [petitioner]'s motion to supplement his habeas petition for an abuse of discretion."); *see also Young v. Stephens*, 795 F.3d 484, 496 (5th Cir. 2015) ("The district court did not abuse its discretion by denying [the habeas petitioner]'s motion to supplement [his motion for a stay]."). As we see it, the district court's denial of the Defendants' fraud-on-the-court claims was also, in effect, an exercise of the court's discretion to deny the Defendants an opportunity to supplement their claims.

The Defendants have not shown that the district court's ruling was an abuse of discretion, especially in light of the court's "broad discretion to manage [its] docket[]." *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009) (quoting *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008)). In not permitting proceedings on the fraud-on-the-court motions to continue any longer, the district court could reasonably have concluded that, given the already protracted proceedings and the voluminous

filings they had produced, permitting supplementation was simply no longer in the interests of justice. Furthermore, the district court expressly took pains to thoroughly review both the unsealed CI file and "the existing record" which included various objections that the Defendants had made to the government's index regarding the contents of the CI file before rejecting the Defendants' fraud-on-the-court claims. Aplts.' App., Vol. VIII, at 1607. And, in light of the Defendants' no more than cursory references to arguments that it supposedly *could have made* with access to the CI file, we are not situated to discern any prejudice to the Defendants from the timing of the court's decision. In any event, though we have no occasion to opine on the matter, the Defendants have made quite clear that with access to the CI file they see no obstacle to "submit[ing] additional independent 60(b) actions" to address any matters left unresolved by the district court. Aplts.' Reply Br. at 36; *see id.* ("The district court order does not foreclose Appellants from independent actions on other misconduct in the § 2255 proceeding.").

Lastly, it is noteworthy that our decision concerning unsealing the file, which was issued before the district court denied the motions, did not purport to bind the court to its decision granting the Defendants leave to supplement. *See Apperson*, 642 F. App'x at 893; *see also Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) ("Although a district court is bound to follow

23

the mandate, and the mandate 'controls all matters within its scope, . . . a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal.'" (omission in original) (quoting *Newball v. Offshore Logistics Int'l*, 803 F.2d 821, 826 (5th Cir. 1986))).

In sum, we discern no abuse of discretion in the district court's effective denial of leave to the Defendants to supplement. And the mere fact that the court's action represents a departure from its prior, interlocutory position   reflected in the district court's 2014 order partially granting the motion to unseal the CI file   does not lead us to think otherwise. *See, e.g.*, *Castaneda v. JBS USA, LLC,* 819 F.3d 1237, 1247 (10th Cir. 2016) ("First, [the appellants] complain that the district court did not impose the relief required by its initial decision after the liability stage of the trial. But that decision did not bind the court. It was an interlocutory decision, which the court could revise at any time before final judgment."); *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("This court . . . has declined to apply [law-of-the-case] limitations to rulings revisited prior to entry of a final judgment, concluding that 'district courts generally remain free to reconsider their earlier interlocutory orders.'" (quoting *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007))).

24

Thus, we conclude that the district court did not abuse its discretion by ruling on the Rule 60 motions at the time it did rather than first offering the Defendants leave to supplement.

## III

We next address the Defendants' argument that the district court failed to follow instructions articulated in *In re Pickard* and thus erred. *See, e.g.*, Aplts.' Opening Br. at 31  36. We reject this argument because the district court's order quite clearly complied with our mandate in *In re Pickard*, when that opinion is considered in its entirety.

The Defendants home in on *In re Pickard*'s remand language, which instructed the district court "to consider in the first instance Defendants' claim that the prosecutor's false statement improperly prevented them from obtaining relevant discovery in the § 2255 proceedings." 681 F.3d at 1207. This language, the Defendants assert, reflects a *determination* by the *In re Pickard* court that the government had in fact made a false statement, with the remaining question to be resolved on remand being whether that false statement had improperly truncated discovery. *See* Aplts.' Opening Br. at 32 (contending that the district court chose "to second-guess [the *In re Pickard*] [c]ourt's decision" when the district court determined that the government had not made a misrepresentation during the § 2255 proceedings); *see also* Aplts.' Reply Br. at 38 (stating that this court's

25

"princip[al] stated concern," as indicated by *In re Pickard*, was "whether the [g]overnment's false statement *unfairly foreclosed discovery*." (emphasis added)). In this vein, the Defendants contend that the district court should have examined the "range of discovery records" the Defendants were prevented from obtaining in the § 2255 proceedings, and they relatedly cite several potentially discoverable documents that they believe the government continues to improperly withhold. Aplts.' Opening Br. at 32 36.

Remand language, however, "'is read in light of our opinion that preceded' it; that is to say, it is our '*entire opinion*,' not just the remand language, that outlines the scope of the mandate" that binds the district court on remand. *United States v. Walker*, 918 F.3d 1134, 1147 (10th Cir. 2019) (emphasis added) (citation omitted) (first quoting *United States v. Shipp*, 644 F.3d 1126, 1129 (10th Cir. 2011); then quoting *Haugen*, 317 F.3d at 1126). And, reading *In re Pickard*'s remand language "in light of [the] opinion that preceded" it, *id.* (quoting *Shipp*, 644 F.3d at 1129), decisively defeats the Defendants' argument here. Specifically, *In re Pickard* limited itself to deciding "*which tribunal* should resolve" the question of whether "the prosecutor committed fraud in the § 2255 proceedings that prevented Defendants from obtaining discovery to establish their § 2255 claims." 681 F.3d at 1205 06 (emphasis added). It did not purport to answer the question of whether the prosecutor committed such fraud. Indeed, not

26

only did *In re Pickard* decline to engage with the merits of that question, it in fact *expressly* declined to opine on whether the government had even made a false statement. *Id.* at 1205 ("Although the government denies that it made any false statement in the § 2255 proceedings, our task is not to ascertain the truth of Defendants' allegations but to decide which tribunal should resolve the matter.").

To be sure, some portions of *In re Pickard* including its remand language do not qualify words such as "false statement" or "fraud" with modifiers such as "allegedly"; however, the opinion, viewed in its entirety, leaves no doubt that the court there refrained from assessing much less opining on the potential falsity of any statements that the government made during the § 2255 proceedings. Indeed, *In re Pickard* made pellucid that it only decided, as is relevant for our purposes, (1) that the Defendants alleged both that the government committed fraud on the court during the § 2255 proceedings and that this fraud forestalled discovery, and (2) that these allegations constituted a "true" Rule 60(b) claim for the district court to consider. *See id.* at 1206 07. The panel left for the district court to determine whether the government had actually made a false statement during the § 2255 proceedings, whether it had committed fraud in doing so, and whether that fraud in fact forestalled discovery.[10]

---

[10] At multiple points in their appellate briefing, the Defendants cite *In re Pickard*'s statement that: "We cannot accept the proposition that the

(continued...)

27

Accordingly, the district court's determination that the Defendants had not established that the government committed fraud on the court during the § 2255 proceedings was the product of an inquiry well within the bounds of *In re Pickard*'s mandate. Moreover, the district court's determination that the Defendants had not established fraud on the court provided a complete response to the question, as framed in *In re Pickard*, of whether "the prosecutor *committed fraud* in the § 2255 proceedings that prevented Defendants from obtaining discovery to establish their § 2255 claims." *Id.* at 1206 (emphasis added). In other words, the district court's conclusion that the Defendants did not establish the existence of fraud by the government eliminated the need for any inquiry into the existence of any additional discoverable material that the Defendants were

---

[10](...continued) government has a free pass to deceive a habeas court into denying discovery just because it similarly deceived the trial court. . . . We doubt that the governing procedural rules permit the government to gain such an advantage by its own fraudulent conduct." 681 F.3d at 1207. The Defendants hint that this statement reflects a conclusion by the *In re Pickard* court that the government had misled, and perhaps even intentionally deceived, the district court during the § 2255 proceedings. *See* Aplts.' Opening Br. at 21 22; Aplts.' Reply Br. at 7. However, this statement rather than reflecting a determination on any aspect of the merits of this case was made merely to support, in the abstract, the panel's ruling that a motion alleging prosecutorial deceit *during § 2255 proceedings* is not, under AEDPA, "second or successive" to a § 2255 motion alleging deceit *during trial*. Crucially, and as we mentioned *supra*, *In re Pickard* declined to opine on the merits of the Defendants' fraud-on-the-court claims to any extent, including whether the government had even made a false statement during the § 2255 proceedings. *See* 681 F.3d at 1205 07.

allegedly prevented from accessing because of such government fraud.[11]  Stated

otherwise, if the government did not commit any fraud on the court, the

Defendants' inability to access any additional discovery cannot be the product of

such government fraud.

## IV

In rejecting the Defendants' fraud-on-the-court claims, the district court

concluded that the Defendants had not shown that the government intentionally

deceived it during or after the § 2255 proceedings.  As we now explain, this

finding withstands our appellate review because the Defendants do not establish

that it was clear error.  Moreover, because a fraud-on-the-court claim cannot

survive without a showing of intentional deception, the remainder of the

Defendants' claims of error presented in this appeal   which allege errors relating

to the district court's determinations regarding other elements of a fraud-on-the-

court claim   may be summarily rejected because, if the court erred at all, its

errors are harmless.  That is, absent a showing of intentional deception by the

---

[11]     For the same reasons, we reject the Defendants' suggestion that the government's arguments following remand in *In re Pickard*, which focused primarily on contending that there had been no fraud on the court during the § 2255 proceedings   rather than contending that any such fraud did not unfairly foreclose discovery during those proceedings   avoided "the princip[al] issue" that *In re Pickard* identified and thus somehow evinced fraudulent intent by the government.  Aplts.' Reply Br. at 10.

29

government, the Defendants simply cannot prevail on their fraud-on-the-court claims.

## A

Defendants repeatedly acknowledge that this case, at bottom, concerns a fraud-on-the-court claim. *See, e.g.*, Aplts.' Opening Br. at 1 ("This appeal is from a final order denying relief without an evidentiary hearing and disposing of Appellants' Rule 60(b)-(d) and *Hazel-Atlas* Motion, asserting the prosecutor committed *fraud on the court* in connection with their § 2255 proceedings . . . ." (citation omitted) (emphasis added)); *see id.* at 5  6, 16.

This court has recognized three procedural avenues for pursuing a fraud-on-the-court claim. The first is via Rule 60(b)(3), which, by its plain terms, permits a court to set aside a judgment due to "fraud . . . by an opposing party." FED. R. CIV. P. 60(b)(3). The two other avenues are currently embodied in Rule 60(d), which provides that Rule 60 "does not limit a court's power to" either "entertain an independent action to relieve a party from a judgment" or to "set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d); *see also United States v. Buck*, 281 F.3d 1336, 1341 (10th Cir. 2002) (recognizing these three procedurally distinct avenues in the context of an earlier iteration of Rule 60 with, as relevant here, substantively identical language). These provisions within Rule 60(d) ultimately "reflect[] and confirm[]" the "inherent power to vacate a judgment

30

obtained by fraud on the court" that the Supreme Court espoused in *Hazel-Atlas*. *United States v. Baker*, 718 F.3d 1204, 1206 (10th Cir. 2013) (discussing an earlier version of Rule 60 with, as relevant here, substantively identical language).

Significantly, irrespective of the procedural vehicle by which litigants elect to pursue a fraud-on-the-court claim, our court has conditioned the success of such claims on essentially the same elements. *See id.* at 1207 (stating that "this court applies the same demanding standard of proof for establishing a fraud on the court" regardless of whether the claim is brought under Rule 60(b)(3) or 60(d)(3)); *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1266 67 (10th Cir. 1995) (evaluating fraud-on-the-court claims brought under the court's inherent equitable power to provide relief for fraud on the court, as recognized in *Hazel-Atlas* and reflected in Rule 60(d)); *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999) (applying *Robinson* in evaluating fraud-on-the-court claims under Rule 60(b)(3)); *see also Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1291 (10th Cir. 2005) (observing that this court has applied the "heightened fraud on the court standard of . . . *Robinson* to misconduct claims under [Rule] 60(b)(3)"). We turn to an examination of those elements.

**B**

"When alleging a claim of fraud on the court, the plaintiff must show by clear and convincing evidence that there was fraud on the court, and all doubts must be resolved in favor of the finality of the judgment." *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996). This high burden owes to the fact that "where a reasonable opportunity has been afforded to the parties to litigate a claim before a court having jurisdiction, and the court has finally decided the controversy, the interests of the public and of the parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again by them." *Robinson*, 56 F.3d at 1265; *see also* Douglas R. Richmond, *Critical Contours of Fraud on the Court*, 37 REV. LITIG. 1, 3 (2018) ("A high standard for fraud on the court is necessary to avoid trampling on the finality of judgments[] [and] to discourage collateral attacks on judgments . . . ."); David R. Hague, *Fraud on the Court and Abusive Discovery*, 16 NEV. L. J. 707, 728 (2016) (observing that, as a result of finality concerns, "[f]raud on the court is a very high bar").

Given the strong interest in preserving the finality of a judgment, "[g]enerally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated," rises to the level of fraud on the court. *Zurich N. Am.*, 426 F.3d at 1291 (quoting *Weese*, 98 F.3d at 552 53); *see Weese*, 98 F.3d at

32

552 53 (observing that a fraud-on-the-court claim cannot be based merely on fraudulent documents, false statements, perjury, non-disclosure of documents in pretrial discovery, or non-disclosure to the court of relevant facts); *see also* Richmond, *supra*, at 3 4 (stating that "fraud on the court is restricted to egregious misconduct that is directed at the court"). Moreover, intent to defraud or deceive is an "*absolute prerequisite* to a finding of fraud on the court." *Weese*, 98 F.3d at 553 (emphasis added); *accord Robinson*, 56 F.3d at 1267 ("[W]hen there is no intent to deceive, the fact that misrepresentations were made to a court is not of itself a sufficient basis for setting aside a judgment under the guise of 'fraud on the court.'"); *id.* ("We think it clear that 'fraud on the court,' whatever else it embodies, requires a showing that one has acted with an intent to deceive or defraud the court."). In other words, for a fraud-on-the-court claim to succeed, it is "essential that there be a showing of *conscious wrongdoing* what can properly be characterized as a deliberate scheme to defraud." *Id.* (emphasis added).

### C

This court reviews for an abuse of discretion the denial of relief for fraud on the court. *See Buck*, 281 F.3d at 1342 43; *Switzer v. Coan*, 261 F.3d 985, 988 (10th Cir. 2001). Our review of such claims, however, "is meaningfully narrower than review of the merits of a direct appeal." *Zurich N. Am.*, 426 F.3d at 1289 (quoting *Amoco Oil Co. v. U.S. EPA*, 231 F.3d 694, 697 (10th Cir. 2000)).

33

Specifically, "[g]iven the lower court's discretion [in assessing such motions], the district court's ruling is only reviewed to determine if a definite, clear or unmistakable error occurred below." *Id.* (quoting *Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004)); *see also id.* ("Parties seeking relief under Rule 60[] have a higher hurdle to overcome because such a motion is not a substitute for an appeal." (quoting *Cummings*, 365 F.3d at 955)). With that said, "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (alteration in original) (quoting *FDIC ex rel Heritage Bank & Tr. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998)).

Relatedly, "the district court's finding of no fraudulent intent is a factual finding that will not be set aside unless clearly erroneous." *Weese*, 98 F.3d at 553. "And a district court's factual findings are not clearly erroneous unless they are 'without factual support in the record, or if [we], after reviewing all the evidence, [are] left with the definite and firm conviction that a mistake has been made.'" *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1011 (10th Cir. 2018) (alterations in original) (quoting *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990)).

**D**

The district court rejected the Defendants' "60(b) and related fraud claims" by finding, *inter alia*, that "the [D]efendants have done nothing to show that the prosecutor has *intentionally* deceived the court." Aplts.' App., Vol. VIII, at 1609 10 (emphasis added).[12] None of the Defendants' many enumerated claims of error presented in their appellate briefing directly challenges the district court's finding on fraudulent intent. Nevertheless, the Defendants argue that they have shown that the finding was clear error. To this end and while they do not cite to any direct evidence that the government intended to deceive the district court during or after the § 2255 proceedings the Defendants describe various "events" that they argue create an inference of such intent. Aplts.' Reply Br. at 1 10; *cf. United States v. Kalu*, 791 F.3d 1194, 1205 (10th Cir. 2015) (noting, in

---

[12]    In their reply brief, the Defendants contend that the district court did not "resolve" the intentional-deception issue because the court "did not say there was no [intentional] deception" and rather stated only that the Defendants had done "nothing to show" intentional deception. Aplts.' Reply Br. at 2. The district court, however, was not tasked with assessing whether the government had *in fact* intentionally deceived the court, but rather with resolving the distinct question of whether the Defendants *had met their evidentiary burden* as they were required to, in order to sustain their fraud-on-the-court claims of demonstrating the government's intentional deception. *See Weese*, 98 F.3d at 552 ("When alleging a claim of fraud on the court, *the plaintiff must show by clear and convincing evidence* that there was fraud on the court . . . ." (emphasis added)). The district court's statement that the Defendants had done "nothing to show" intentional deception thus represented the court's determination that the Defendants had failed to meet their burden. And it is this determination that we review on appeal. *See, e.g., id.* at 553.

the context of reviewing a mail-fraud conviction on direct appeal, that "because fraudulent intent is difficult to prove with direct evidence, it may be inferred from circumstantial evidence considered in its totality").

These "events," at their core, center around the following: (1) the government's representation, in its response to the Defendants' § 2255 motions, that no agency other than the DEA was "involved" in the LSD investigation into the Defendants' conduct, and its later representations during the Rule 60 proceedings that non-DEA agency involvement in the investigation was insignificant; (2) the government's failure during the § 2255 proceedings, and for some time during the Rule 60 proceedings, to reveal information about OCDETF and HIDTA involvement in the LSD investigation into the Defendants' conduct; and (3) the government's alleged failure during the Rule 60 proceedings to comply with an order to release the DEA's CI file on Mr. Skinner, as well as the government's alleged failure during those same proceedings to respond to one of the Defendants' motions. *See* Aplts.' Reply Br. at 3 10. These events, the Defendants argue, are "indisputable and conclusive" evidence of the government's "unconscionable intent to deceive" the district court during and after the § 2255 proceedings. *Id.* at 2.

We disagree. More specifically, we cannot conclude based on these "events" that the district court clearly erred in determining that the Defendants

36

had failed to marshal sufficient evidence to establish the government's fraudulent intent during or after the § 2255 proceedings, particularly given that the evidence supporting a fraud-on-the-court determination must be "clear and convincing," with "all doubts . . . resolved in favor of the finality of the judgment." *Weese*, 98 F.3d at 552.

**1**

To begin, we acknowledge that the government did not speak precisely and comprehensively when it stated, in response to the § 2255 motions, that agencies besides the DEA were not "involved" in the investigation into the Defendants' drug activities. Aplts.' App., Vol. I, at 197. Specifically, and at the very least, the IRS and USMS were nominally involved *See id.*, Vol. VI, at 1255 (noting that the IRS and the USMS were "participating agencies" for Operation White Rabbit and Operation White Rabbit East, respectively). But, in using the word "involved," the government could plausibly    particularly if we resolve all doubts in favor of the finality of the judgment, as we must here, *see Weese*, 98 F.3d at 552    have concluded that the only agency involvement warranting mention was substantive involvement, which is in fact precisely what the district court understood the government to be addressing. *See* Aplts.' App., Vol. VIII, at 1610 ("[T]he prosecutor represented simply that . . . other cases cited by [D]efendants [in their § 2255 motion] 'involved agencies not involved in this investigation' . . .

37

. The [D]efendants have not shown any reason to believe that . . . the DEA was not the only agency with any *substantive* role in investigating their case . . . ." (emphasis added)).

Moreover, the record does not indicate that any other agency's involvement in the investigations into the Defendants' LSD activities was of such a character that the district court would have been precluded from plausibly finding that the government's effective representation that the DEA was the only agency substantively involved in the investigations was true. In other words, and more to the point, we cannot conclude that the court committed clear error in finding that the government's representation concerning other-agency involvement did not evince fraudulent intent.

Much of the Defendants' argument on appeal that other agencies in fact substantively participated in the LSD investigations largely consists of citing general OCDETF and HIDTA guidelines, which the Defendants allege mandate substantive involvement from multiple agencies. *See, e.g.*, Aplts.' Opening Br. at 26 ("[The government] now is claiming minimal participation by signatory agencies . . . in the OCDETF investigations, even though the structure of OCDETF requires significant multi-agency involvement."); Aplts.' Reply Br. at 11 ("Both OCDETF and HIDTA designation requires signatory agencies to contribute and coordinate significant resources and personnel . . . ."). But even

38

assuming that such requirements exist, as the district court reasoned, that does not mean that they were necessarily adhered to in this instance. Resolving "all doubts . . . in favor of the finality of the judgment," *Weese*, 98 F.3d at 552, it is certainly possible    as the Defendants themselves expressly acknowledge, *see, e.g.*, Aplts.' Opening Br. at 26   27    that the *particular* OCDETF and HIDTA investigations at issue here (for efficiency, bureaucratic, or other reasons) simply did not follow the general requirements and that government agencies other than the DEA did not *in fact* play a substantive role.

As for case-specific facts concerning the investigations at issue here    in contrast to general requirements that typically apply to such investigations    the Defendants cite various documents and memoranda. These include internal FBI memoranda describing the OCDETF investigations and inviting various FBI offices to participate, Aplts.' App., Vol. V, at 1153   58; a heavily-redacted FBI interoffice memorandum regarding inquiries in the Caribbean relating to Mr. Pickard, *id.*, Vol. VI, at 1333   34; the declaration of DEA Agent Nichols, discussed *supra*, which in brief stated that the FBI "was not a participant" in the OCDETF investigations concerning the Defendants, but did assist with enhancing the audio of undercover recordings involving the Defendants and Mr. Skinner, and that the IRS played a limited role in connection with certain tax records and through participation in DEA interviews, *id.* at 1252   57; and four pages of IRS

39

Criminal Investigation reports from the 2001 2002 period identifying Mr. Pickard as the subject of the reports, discussing how he was alleged to be a "major LSD trafficker" engaged in laundering proceeds, and appearing to calculate a "provable money laundering amount," *id.* at 1336 49.

The FBI memoranda, however, do not state that the FBI was in fact a participant in the LSD investigations of the Defendants, nor do the memoranda establish whether, or to what the extent, the various FBI offices were invited to participate in the investigations, and actually opted to do so. *See, e.g., id.*, Vol. V, at 1155 58 (stating, at the bottom of each invitation, that the various FBI offices should contact OCDETF coordinators "[*i*]*f a decision is made to participate in this investigation*" (emphasis added)). Therefore, the memoranda do not contradict the essence of the Nichols declaration concerning the FBI's lack of participation. And, more generally, the limited inquiries and notices in these memoranda do little to undermine the government's effective assertion that the DEA was the only agency substantively involved in the LSD investigations of the Defendants' conduct.[13] Moreover, the Defendants provide us no reason to believe

---

[13] Though the Defendants allege that the FBI also participated in the investigations by processing handwriting samples, analyzing fingerprints, and sharing record systems while "collocating and commingling" FBI personnel with the DEA as part of the HIDTA investigation, Aplts.' Opening Br. at 12 13, these allegations are either presented without citations to the record or else rely on inferences from general guidelines that are untethered to the specific facts of this

(continued...)

40

that either the FBI's or the IRS's involvement in this case, was anything other than how Agent Nichols described it — i.e., "incidental or minimal" to the broader investigation. *Id.*, Vol. VI, at 1255. Finally, the IRS Criminal Investigation Reports are largely bare-bones forms and, more to the point, are completely devoid of information shedding light on the extent to which the agency in fact participated in the investigation of the Defendants' LSD activities.

And, of course, all of this evidence should be weighed against the pertinent evidence that the government introduced following remand in *In re Pickard* — including the entirety of Agent Nichols's declaration — which tends to suggest that the IRS and the FBI did not provide more than marginal assistance to the investigations into the Defendants' drug activities. *See id.* at 1247–60.

Even if we assume *arguendo* that the government's imprecise and under-inclusive use of the term "involved" is properly deemed a misrepresentation — recognizing that other agencies were in fact at least nominally and incidentally involved in the LSD investigations — any such misrepresentation was not so egregious that the district court clearly erred in finding that the government's conduct did not evince an intent to deceive or defraud the court.[14]

---

[13](...continued)
case.

[14]    Beyond arguing that the government revealed fraudulent intent by allegedly downplaying the involvement of non-DEA agencies in the LSD
(continued...)

41

In particular, as noted, the government plausibly could have concluded in good faith that the only agency involvement warranting mention was substantive involvement and accordingly responded that the DEA was the only agency "involved" in the LSD investigations of the Defendants' conduct. Stated otherwise, the evidence before us does not allow us to conclude that the government's statement was so far removed from the truth that the district court clearly erred in determining it did not evince fraudulent intent. And the same holds true for the government's subsequent statement in which it "denie[d] [that] it made any false statements in the § 2255 proceedings." *In re Pickard*, 681 F.3d at 1205.

---

[14](...continued)
investigation into the Defendants' conduct, the Defendants argue that the government revealed fraudulent intent by "denying [its] prosecutorial responsibility" when it stated in response to the § 2255 motions that "there was no reason to look beyond the information provided by DEA" for relevant *Brady* or *Giglio* material, Aplts.' App., Vol. I, at 203. *See, e.g.*, Aplts.' Reply Br. at 8. According to the Defendants, this statement conflicted with *United States v. Combs*, 267 F.3d 1167 (10th Cir. 2001), a case which they claim indicates that a prosecutor's duty to search would apply here to the files possessed by non-DEA agencies participating in the OCDETF and HIDTA investigations.

Even assuming *arguendo* that the Defendants correctly characterize the import of *Combs*, and further assuming that the government's statement that there was "no reason to look beyond the information provided by the DEA" was inconsistent with *Combs*, we do not see how    resolving all doubts in favor of the finality of the judgment, *see Weese*, 98 F.3d at 552    the government's statement can be read as supporting a finding that the government made an intentional decision to deceive the district court, rather than more benignly reflecting good-faith disagreement or confusion about existing law.

**2**

Furthermore, as for the government's initial failure to disclose OCDETF and HIDTA involvement in the investigation of the Defendants' drug activities, we note that the government never affirmatively denied such involvement. For instance, in responding to the Defendants' motion to compel production of the OCDETF proposals during the § 2255 proceedings, the government merely asked that the motion be denied as premature because the Defendants had not received leave to conduct discovery, without offering any suggestion that such proposals did not in fact exist. And the district court never expressed that it was under the mistaken impression that OCDETF or HIDTA involvement in the relevant investigations did not exist. In fact, in denying the Defendants' motion to compel production of the OCDETF proposals, the district court effectively acknowledged the possibility that such proposals existed and stated that its ruling was not contingent on that possibility. *See, e.g.*, Aplts.' App., Vol. IV, at 928 ("Under these circumstances, the court sees no reason to examine the OCDETF proposal in this case, *even if one exists*." (emphasis added)).

For these reasons, we do not see how the fact that the government did not mention OCDETF and HIDTA involvement during the § 2255 proceedings and for part of the Rule 60 proceedings constitutes "clear and convincing" evidence of an intent to *deceive* or *defraud* the district court, particularly when we resolve doubts

43

"in favor of the finality of the judgment." *Weese*, 98 F.3d at 552; *see* Richmond, *supra*, at 34 (noting that "courts . . . do not consider a party's mere failure to disclose evidence or information in discovery or other pretrial proceedings to be fraud on the court"); *cf. Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 364 (3rd Cir. 1996) (stating, in reviewing a bankruptcy proceeding, that the court was "aware of" "no case in which a court held that intent to mislead or deceive could be inferred from the mere fact of nondisclosure"); *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000) ("[T]he common law clearly distinguishes between concealment and nondisclosure. The former is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter. The latter is characterized by mere silence. . . . [S]ilence as to a material fact (nondisclosure) . . . usually does not give rise to an action for fraud.").

**3**

Third and finally, though the Defendants assert that the government "chose not to comply" "for another five years" with the district court's February 2014 order partially granting the Defendants' motion to unseal the DEA's CI file on Mr. Skinner, Aplts.' Reply Br. at 9, the Defendants offer no indication that any such delay by the government in producing the file should be viewed as owing to willful non-compliance rather than continued, good-faith litigation concerning the

44

propriety of access to that file. *Cf. Apperson*, 642 F. App'x at 895 98 (describing litigation regarding access to the CI file that was based on the government's "good-faith belief that it was already in compliance with the [2014 order] based on its prior submissions to the court"). Moreover, while the Defendants assert that the government failed to respond to their November 2012 "Motion re Fraud on Remand," which was filed subsequent to this court's decision in *In re Pickard*, they have offered us no authority, nor are we able to find any independently, to suggest that any failure by a party to formally respond to an adverse party's motion evinces an intent to deceive or defraud the court. *Cf. Zurich N. Am.*, 426 F.3d at 1292 ("[The fraud-on-the-court movant] . . . fails to establish fraud by clear and convincing evidence; its proof consists only of a failure to produce documents. . . . [The movant]'s bald claim that . . . [the] failure to produce the documents 'smacks of dishonesty' . . . is conclusory.").

**\*\*\***

In sum, the "events" that the Defendants have identified fail to establish that the district court clearly erred in finding that the Defendants had made an insufficient showing of fraudulent intent by the government.[15]

---

[15] The Defendants contend that the district court failed to consider certain legal standards under which their fraud-on-the-court motions were submitted and thus erred. *See, e.g.*, Aplts.' Opening Br. at 42 43. However, this argument is waived. Specifically, the totality of the Defendants' argument on this

(continued...)

45

## E

Because the district court did not clearly err in its determination that the Defendants made an insufficient showing of the government's fraudulent intent during or after the § 2255 proceedings, the Defendants' fraud-on-the-court claim must fail. *See Zurich N. Am.*, 426 F.3d at 1291 ("Intent to defraud is an 'absolute prerequisite' to a finding of fraud on the court." (quoting *Robinson*, 56 F.3d at 1267)). Consequently, the Defendants' remaining claims of error on appeal   which allege errors relating to the district court's determinations regarding other elements of a fraud-on-the-court claim   allege, at most, harmless error. *See* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.");

---

[15](...continued)
front amounts to little more than listing allegedly applicable standards   often consisting of a case citation and a quotation of just a few words from the case   and an allegation that the district court failed to consider them. That is not enough. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that '[a]rguments inadequately briefed in the opening brief are waived.'" (alteration in original) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998))); *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1219 n.4 (10th Cir. 2016) (stating that "passing references" to an issue do not constitute adequate briefing). Moreover, even if we were inclined to consider their late-blooming elaboration on this argument in their reply brief, *see, e.g.*, *Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008) ("[W]e will not consider the arguments [the appellant] raised for the first time in his reply brief."), it does little to advance Defendants' cause   in particular, failing to even define many of the relevant standards, let alone explicate how they should have been applied. Therefore, we deem this other-legal-standards argument to be waived.

46

*Hill v. J.B. Hunt Transp., Inc.*, 815 F.3d 651, 659 (10th Cir. 2016) ("An error affecting a substantial right of a party is an error which had a *substantial influence or which leaves one in grave doubt as to whether it had such an effect on the outcome*." (emphasis added) (quoting *McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1142 (10th Cir. 2006))).

These remaining claims include the Defendants' various arguments as to why the district court erred in finding that the record did not support that the government made any *misrepresentations* intentional or otherwise during the § 2255 and Rule 60 proceedings. More specifically, these arguments contend, *inter alia*, that the district court should have adopted an approach allegedly reminiscent of one taken in *United States v. Ailemen*, 986 F. Supp. 1228, 1271 (N.D. Cal. 1997), and consequently inferred from OCDETF and HIDTA operational guidelines that agencies other than the DEA were involved in the investigation into the Defendants' LSD activities, *see, e.g.*, Aplts.' Opening Br. at 23 31, 36 37; that the case-specific evidence in the record supported that non-DEA agencies were involved in the investigation, *see, e.g.*, Aplts.' Opening Br. at 29 30; that the district court applied "vague and subjective standards" in considering whether non-DEA agencies were involved in the investigation, *see, e.g.*, Aplts.' Opening Br. at 38 39; and that the district court overlooked the import of *United States v. Combs*, 267 F.3d 1167 (10th Cir. 2001), and related

47

cases in assessing the tenability of the government's statements and position, *see, e.g.*, Aplts.' Opening Br. at 39 40. We need not assess the merits of these arguments because our determination that the district court did not clearly err in concluding that the Defendants made an insufficient showing of the government's intentional deception a dispositive element of a fraud-on-the-court claim would render harmless any error that the court made on such matters (e.g., any error the court made in determining that the government made a misrepresentation in the first place).

We reach a similar conclusion regarding the Defendants' arguments contending that the district court erred by suggesting that any misrepresentation creating the basis for a fraud-on-the-court claim must have "affected the trial in any substantive way" or resulted in a "miscarriage of justice," Aplts.' App., Vol. VIII, at 1610. *See, e.g.*, Aplts.' Opening Br. at 40 42. That is, notwithstanding the district court's allegedly erroneous discussion of materiality, the court's separate finding that the Defendants made an insufficient showing of intentional government deception necessarily defeats the Defendants' fraud-on-the-court claim. *See, e.g.*, *Robinson*, 56 F.3d at 1267.[16]

---

[16] The Defendants suggest that *Rosales-Mireles v. United States*, --- U.S. ----, 138 S. Ct. 1897 (2018), should shape our harmless-error analysis in their favor. *See* Aplts.' Reply Br. at 19 n.2. But *Rosales-Mireles* is inapposite: that case merely elaborated on when errors *that affect substantial rights* further

(continued...)

# V

For the foregoing reasons, we **AFFIRM** the district court's judgment.


Entered for the Court


Jerome A. Holmes
Circuit Judge

---

[16](...continued)
rise to the level of "seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings," as must be shown to satisfy the plain-error standard. 138 S. Ct. at 1904 05 (quoting *Molina-Martinez v. United States*, 578 U.S. ----, 136 S. Ct. 1338, 1343 (2016)); *see id.* at 1911 (specifically holding that "the failure to correct a plain Guidelines error *that affects a defendant's substantial rights* will seriously affect the fairness, integrity, and public reputation of judicial proceedings" (emphasis added)). However, the plain-error rubric is not at issue here, and nothing in *Rosales-Mireles* suggests that alleged errors  like those here  that *could not* affect a party's substantial rights should be treated as anything other than harmless pursuant to Rule 61.